IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THERESA VELASQUEZ,

       Plaintiff,

vs.                                                       No.  05cv1094 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on Plaintiff's (Velasquez') Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 9]**, filed February 19, 2006, and fully briefed on March 30, 2006.  On July 30, 2004, the Commissioner of Social Security issued a final decision denying Velasquez' claim for disability insurance benefits.  Velasquez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be GRANTED.

**I.  Factual and Procedural Background**

      Velasquez, now forty-seven years old (D.O.B. April 15, 1959), filed her application for disability insurance benefits on January 14, 2003 (Tr. 47, 493), alleging disability since March 1, 2002, due to "asthma, depression, obesity, anemia, memory loss, loss of vision, weakness, balance problems, tremors, shakiness, problems dropping things, pain, headaches, loss of time of day and general memory difficulties."  Tr. 16.  Velasquez has a high school education and past relevant

work as an office manager and an insurance clerk.  *Id.*  On July 30, 2004, the ALJ denied benefits, finding Velasquez was not disabled as she could perform "a wide range of light exertion unskilled work . . . ."  Tr. 25.  The ALJ found Velasquez had "a 'severe' combination of impairments including physical impairments relative to obesity, asthma, and anemia and a mental impairment described as <u>subtle evidence of left hemisphere type cognitive impairment</u>, as well as mixed anxiety and depression," but these impairments were not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Tr. 16 (emphasis added).  Velasquez filed a Request for Review of the decision by the Appeals Council.  On August 17, 2005, the Appeals Council denied Velasquez' request for review of the ALJ's decision.  Tr. 5.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Velasquez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Velasquez makes the following arguments: (1) the ALJ erred in conclusively applying the Medical-Vocational Guidelines (the grids) after rejecting the vocational expert's (VE) opinion when she had significant nonexertional mental and physical impairments; (2) the ALJ erred when he failed to address the medical and vocational evidence of her tremor and its effect on her ability to work; and (3) the ALJ's rejection of the VE evidence was prejudicial.

It is well established that the grids should not be applied conclusively "unless the claimant could perform the full range of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range." *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir.1993). The use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the claimant's nonexertional impairment is insignificant. *Adkins v. Barnhart*, 80 Fed.Appx. 44, 47 (10th Cir. Oct. 23, 2003); *see also Thompson v. Sullivan*, 987 F.2d at 1488. Therefore, the Court evaluates the record to determine whether substantial evidence supports the ALJ's decision that Velasquez was capable of engaging in a full range of light work and was physically capable of performing most jobs in that category. *See Ragland*, 992 F.2d at 1057. "Absent such evidence the [Commissioner] cannot satisfy the burden at step five without producing expert vocational

testimony or other similar evidence to establish the existence of significant work within the claimant's capabilities." *Id.*

In this case, the ALJ found Velasquez "had a residual functional capacity for a wide range of light exertion unskilled work that does not require more than occasional stooping or squatting and does not require frequent exposure to smoke, dust, fumes and chemicals." Tr. 25. In support of his RFC finding, the ALJ noted as follows:

> Therefore, upon consideration of the claimant's subjective allegations, I am persuaded the claimant's residual functional capacity is reduced, but not eliminated. In making this determination, I have concluded the claimant is not a fully credible witness, and the statements regarding the functional effects of her condition are not fully accurate. In determining the credit to be afforded the claimant's testimony regarding the functional effects of her condition, my consideration has included, but is not limited to her manner while testifying at the hearing, the consistency of her testimony with statements on other occasions in the record, as well as the claimant's interest, bias, or prejudice considered in light of all the evidence in this case. Thus, for these reasons, and the particular reasons set forth below, I have not fully accepted as credible the allegations of functionally limiting symptoms and have afforded the claimant's statements regarding the functional effects of her impairments limited weight.
>
> None of her treating or evaluating medical sources have offered the opinion that the claimant's physical and mental impairments preclude her ability to perform the physical or mental demands of basic work activity. Indeed, Dr. Riley recommended she continue to exercise and to lose weight (Exhibit 4F, at 2). Dr. Fisher's only limitation regarding work activity pertained to her returning to work in the building that exacerbated her underlying asthma following a presumed exposure to sulfuric acid mist (Exhibit 5F, at 7). Dr. Chiulli concludes that the limitations noted in his testing and evaluation were subtle, and were limiting with respect to her performance with complex verbal materials. He reported subtle right sided weakness; nonetheless, Dr. Chiulli encouraged the claimant to increase her activity level because even these minimal findings would improve with activity. He did not indicate the limitations he noted would significantly limit her ability to perform the mental demands of basic work activity.
>
> The claimant has had a residual functional capacity for a wide range of light exertion unskilled work that does not require more than occasional stooping or squatting and does not require frequent exposure to smoke, dust, fumes and chemicals.
>
> The term "residual functional capacity" refers to an individual's ability to work despite the effects of her impairments and any related symptoms, e.g., pain. A residual functional capacity assessment takes into account a person's exertional and nonexertional capacities. Exertional capacities encompass sitting, standing, walking, lifting, and carrying, whereas

> nonexertional capacities take into account mental, postural, manipulative, and sensory abilities, as well as an individual's environmental tolerances.
>
> Light work requires no more than 20 pounds of lifting at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. Light jobs typically also entail extensive standing or walking. However, a job is classified as "light," even if the person performing it sits most of the time and does little lifting or carrying, when he or she must push or pull hand or foot controls. Soc. Sec. Rul. 83-10 (C.E. 1983).
>
> The claimant's obesity, asthma and anemia limit her to work within the light range of work activity. Nonexertional limitations relative to these impairments include the need to avoid certain postural movements as indicated above and to avoid work in the presence of fumes, odors, dusts, gases, and poor ventilation. Additionally, her cognitive impairment results in nonexertional limitations that preclude work that involves more than simple one to three step instructions. <u>I have rejected the presence of functional limitations beyond those described in my findings of the claimant's residual physical and mental functional capacity based upon my discussion of the claimant's credibility under Finding 5, above</u>.
>
> ** ** ** ** ** ** ** ** ** **
>
> The claimant's capacity to adjust to other work must be evaluated initially within the context of the Medical-Vocational Guidelines of Appendix 2 to the Regulations. If the claimant's residual functional capacity and vocational profile fit exactly one of the categories, or "grids" established by the Guidelines, administrative notice is taken of the number of jobs that exist in the national economy for such an individual and a binding decision of "disabled" or "not disabled" is mandated by the rules. If the claimant does not precisely fit a grid rule, a decision may be reached by using the grid rules as a framework for decision. In doing so, the testimony of an impartial vocational expert may be used and should be used if the occupational base of jobs established under the rules is substantially eroded.
>
> In the present case, the claimant's residual functional capacity is for a wide range of light work. Her non-exertional limitations established in this decision would not significantly erode the occupational base for light work. A decision of "not disabled" is therefore directed by rule 202.21 of Appendix 2. <u>I have rejected any additional limitations for the reasons set forth above and therefore do not rely upon the vocational expert's testimony, which responded to a residual functional capacity not supported by the entire record</u>.

Tr. 25-26 (emphasis added). The Court notes that the ALJ did not include Velasquez' problem with hand tremors in his RFC determination. The ALJ dismissed the presence of hand tremors, noting, "Notably, there is no documentation of any continuing hand tremors." Tr. 17. This finding is not supported by the evidence. On September 1, 2004, Elizabeth Lakind, M.D., one of Velasquez' physicians, evaluated her. Tr. 288. Dr. Lakind's examination indicated "continues

notable for right tremor greater than left with action." *Id.*  This evidence was not before the ALJ. However, the evidence was before the Appeals Council. Tr. 6.  Therefore, the Court must consider it when evaluating the Commissioner's decision for substantial evidence. *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence); *see also, Chambers v. Barnhart*, 389 F.3d 1139 (10th Cir. 2004).

On the same day, Dr. Lakind also admitted Velasquez to the hospital for "immediate evaluation of significant anemia." *Id.*  The laboratory results indicated a hemoglobin of 7.6 and a hematocrit of 26. *Id.*  This is objective evidence supporting Velasquez' continued complaints of anemia and fatigue. *See e.g.*, Tr. 70, 82, 84, 89, 92, 93, 95, 96, 111, 114, 115, 119, 133, 135, 139 (5/1/02 Dr. Riley- "anemia being treated now, we are not sure of the source of blood loss"). Fatigue is also a nonexertional impairment that the ALJ should have considered in determining Velasquez' RFC.

Finally, Dr. Chiulli, a clinical neuropsychologist, performed a neuropsychological evaluation on Velasquez and found, in part, as follows:

> Current Subjective Report:  Ms. Velasquez completed a neuropsychological symptom checklist, indicating change in sense of smell, loss of vision, muscle weakness, balance problems, tremors or shakiness, and occasional problem dropping things.  She indicated pain and headache.  Cognitive complaints include forgetting time and day, general memory difficulties, difficulty thinking clearly or quickly, and being more easily distracted.  She reported difficulty thinking of the right word when talking, understanding others, and following conversations. Emotional symptoms were reported including sadness or depression, stress-tension-anxiety, worry or guilt, and loss of interest.  The patient gave a history of head injury in childhood, cardiomyopathy, and anemia.
>
> \*\* \*\* \*\* \*\* \*\*
>
> Behavioral Observations:  The patient was pleasant and cooperative to testing and put forth good effort and attention to task.  She was reluctant to offer responses of which she was not fully confident, and was encouraged at times to offer a "guess."  She did not complain of pain or fatigue during testing.

Tests administered:

1. Wechsler Adult Intelligence Scale-II
2. Attention Process Training Test
3. Concentration Endurance
4. Wechsler Memory Scale-Revised
5. California Verbal Leaning Test-II
6. Complex Figure Test
7. Controlled Oral Word Association Test
8. Boston Naming Test
9. Complex Ideational Materials
10. Finer Tapping
11. Grooved Pegboard
12. Grip Strength
13. Frontal Motor Planning
14. Trail Making Test, Parts A and B
15. Wisconsin Card Sorting Test
16. Minnesota Multiphasic Personality Inventory-2

\*\* \*\* \*\* \*\* \*\*

CONCLUSIONS AND RECOMMENDATIONS: The results of neuropsychological evaluation indicate subtle evidence of left hemisphere type cognitive impairment, including below expectation performance on measures of verbal fluency, naming, delayed recall of complex verbal materials (simple recall being adequate) and subtle evidence of right sided weakness. <u>The patient performed well on measures of immediate recall, and neither this nor her performance on attention tasks suggests that psychological issues are primary in her cognitive complaints.</u> <u>It is noted that the results of testing are consistent with the neurological record that indicates some abnormality on the EEG and SPECT involving the left temporal lobe</u>.

These results were discussed with the patient and with the patient's sister who accompanied her. There was discussion of the fatigue that she experienced following the testing, and the likely benefit of increasing endurance. We discussed the need to gradually increase activity mentally as well as physically, and that over time, improved endurance is likely to result. The patient noted that having the testing was a positive experience, with her ability to perform tasks being at times better than she had expected. Thus, while <u>some deficits are present, it is expected that improvement may be seen over time</u>. It may be best for the patient to work at her own pace and gradually increase her activity, although referral for some cognitive rehabilitation with a Speech Pathologist may at some point be worth consideration.

Tr. 245-246(emphasis added). The ALJ interpreted Dr. Chiulli's evaluation to mean that Velazquez retained the ability to perform the demands of unskilled work and was precluded from work that involved more than simple one to three step instructions. Tr. 22, 25. The ALJ failed to

8

explain how he came to this conclusion. Although Dr. Chiulli indicated that with time Velasquez' deficits would improve, he did not indicate how long this would take.

Based on the foregoing, the Court finds the ALJ's conclusive reliance on the grids problematic. Accordingly, the Court will remand this action to allow the ALJ to redetermine Velasquez' RFC and consult with a vocational expert. The ALJ should also consult with Dr. Chiulli regarding how Velasquez' cognitive deficits affect her ability to engage in substantial gainful activity. However, the Court expresses no opinion as to the extent of any impairment, or whether Velasquez was or was not disabled during the relevant time period within the meaning of the Social Security Act. This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

                                                          
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**